UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-23400-Civ-COOKE/TORRES

ATLAS ONE FINANCIAL GROUP, LLC,

     Plaintiff,
vs.

JOSE LUIS ALARCON, *et al.*,

     Defendants.
_____/

**OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

THIS CASE is before me on the Plaintiff's Motion for Summary Judgment (ECF No. 73) and Defendants' Cross-Motion for Summary Judgment (ECF No. 76). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, summary judgment is granted in part in Plaintiff's favor.

I. BACKGROUND

This is a breach of contract and indemnification action arising from the alleged breach of a release executed by the Plaintiff, Atlas One Financial Group, LLC ("Atlas One"), and the Defendants, collectively referred to as the "Alarcon Group." There are no genuine issues of material facts in dispute.

Atlas One is a financial services and asset management firm that is licensed as a U.S. broker-dealer. (Compl. ¶ 4.) The Alarcon Group had three different individual investment accounts with Atlas One, which are at issue in this case: Accounts 9783, 9775, and 9908. (Compl. ¶¶ 5–7; *see also* FINRA Statement of Claim ¶¶ 7–9, ECF 73-7.) Atlas One's clearing broker for these three accounts was Pershing, LLC ("Pershing"). (Kalb Aff ¶ 4, ECF No. 73-3; Brokerage Account Statements, ECF Nos. 73-4–73-6; Margin Agreement, at 1, ECF No. 77-2.)  Atlas One and Pershing's relationship is governed by a Fully Disclosed Clearing Agreement (the "Clearing Agreement") dated January 12, 2006. (ECF No. 77-1.)

The existence of the Clearing Agreement between Atlas One and Pershing was disclosed to the Alarcon Group in a Margin Agreement each defendant signed in 2008 (under the heading "Role of Pershing") and in the brokerage account statements Atlas One

sent to each account holder in 2008 (also under the heading "Role of Pershing") (*See* Margin Agreements, ECF No. 77-2; Brokerage Account Statements, ECF Nos. 73-4–73-6.) The disclosure in the brokerage account statements sent by Atlas One to each defendant provide:

THE ROLE OF PERSHING

>   ***Pershing carries your account as clearing broker pursuant to a clearing agreement with your financial institution***. Pershing may accept from your financial institution without inquiry or investigation (i) orders for the purchase and sale of securities and other property and (ii) any other instructions concerning your account. Pershing is not responsible or liable for any acts or omissions of your financial institution or its employees and it does not supervise them. Pershing provides no investment advice nor does it assess the suitability of any transaction or order. ***Pershing acts as the agent of your financial institution*** and you agree that you will not hold Pershing or any person controlling or under common control with it liable for any investment losses incurred by you.

(Emphasis added.)

In 2010, the Alarcon Group sued Atlas One for mismanagement of, and unauthorized trading on, the Alarcon Group's investment accounts. The accounts at issue in that litigation are the same at issue here. (*See* State Court Complaint, ECF No. 73-1.) The parties settled the matter and entered into a Confidential Settlement Agreement and Release of All Claims (the "Settlement Agreement") on September 22, 2010. (ECF No. 73-2.) The Settlement Agreement contains the following release provision (hereinafter, the "Release"):

>   **General Release.**   Alarcon Group, as Releasors, releases and forever discharges Atlas One and Westchester Surplus Lines Insurance Company, their respective past, present and future predecessors-in-interest, successors-in-interest, assigns, executors, administrators, personal representatives, heirs, insurers, reinsurers, parent corporations, subsidiaries, affiliates, attorneys, employees, former employees, independent contractors, officers, directors, agents, brokers, representatives, third party administrators, trustees, stockholders, privies, associations, or partnerships ("Releasees") of and from any and all claims, demands, causes of action, suits, obligations and liabilities

of whatever kind or nature, whether known or unknown, suspected or unsuspected, whether at law or in equity, which Alarcon Group ever had, now has, or will ever have, or which its past, present and future predecessors-in-interest, successors-in-interest, assigns, executors, administrators, personal representatives, heirs, insurers, reinsurers, parent corporations, subsidiaries, affiliates, attorneys, employees, former employees, independent contractors, officers, directors, agents, brokers, representatives, third party administrators, trustees, stockholders, privies, associations, or partnerships may have by reason of, or in any way whatsoever including, but not limited to:

    A. Any and all brokerage or investment accounts maintained with Atlas One;

    B. Any and all claims for money, losses, earnings, payments, attorneys' fees, benefits rights, tax payments, tax penalties, claims for punitive damages, claims for violation of any state or federal statute, claims for bad faith, compensatory damages, sanctions, costs, interest, expenses and compensation, and/or profits Alarcon Group made, or could have made, relating to, or arising out of the investments which were the subject of the Action;

    C. Any and all claims which were asserted or could have been asserted in the Action; and

    D. Any act, omission, transaction, dealing, conduct or negotiation of any kind whatsoever between Alarcon Group and Atlas One, as further described in this Paragraph 3 above as Releasors and Releasees, or between anyone acting or purporting to act on its behalf from the beginning of time to the date of this Agreement.

In 2011, after executing the Settlement Agreement, Alarcon Group filed a statement of claim against Pershing before the Financial Industry Regulatory Authority ("FINRA"), alleging that Pershing ignored red flags in connection with Atlas One's mismanagement of Accounts 9783, 9775, and 9908, and breached contractual duties owed to the Alarcon Group. (Statement of Claim, ECF No. 73-7.) Pershing moved to dismiss the statement of claim on the ground that the Release barred the claims against Pershing. The arbitrators

denied the motion without prejudice. The parties settled before the final hearing in the arbitration, with Pershing paying $145,000 to the Alarcon Group. (Settlement Agmt, ECF No. 73-10.)

After settling with the Alarcon Group, Pershing filed a statement of claim against Atlas One, demanding that Atlas One indemnify and reimburse Pershing for the $145,000 payment it made to the Alarcon Group, as well as attorney's fees and costs and mediator fees of approximately $110,672.93. (Statement of Claim, ECF No. 73-11.) The parties settled before the final hearing in the arbitration, with Atlas One paying $225,000 to Pershing. (Settlement Agreements, ECF Nos. 73-12, 73-13.)

After settling with Pershing, Atlas One filed this lawsuit against the Alarcon Group for breach of contract, common law indemnification, and declaratory judgment. In essence, Atlas One claims the Release barred Alarcon Group from filing a claim against Pershing arising out of the mismanagement of Accounts 9783, 9775, and 9908. I agree.

## II. LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

### III. ANALYSIS

A settlement agreement is a contract; its construction and enforcement is governed by Florida contract law. *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). "The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement." *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). "[W]here a contract is facially complete and contains no ambiguous terms, Florida law requires those contracts be enforced in accordance with their terms." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012). A provision or term is ambiguous "only when it is of uncertain meaning, and may be fairly understood in more ways than one." *Id*. Otherwise, "when the terms of a contract are unambiguous, the Court is bound to give the language therein its plain and ordinary meaning." *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990).

The language of the Settlement Agreement and Release is unambiguous. First, the Release expressly and unambiguously covers Atlas One and its agents. Contrary to the Alarcon Group's contentions, the use of the word "agent" in the Release does not create an ambiguity which requires me to turn to extrinsic evidence. *See Horizon Fin., F.A. v. Hansen*, 791 F. Supp. 1561, 1573 (N.D. Ga. 1992) (construing release language under Pennsylvania law: "'Agents' is not an ambiguous term."); *Alpine Fresh, Inc. v. Washburn*, 77 So. 3d 765, 767 (Fla. 3d DCA 2011) (interpreting release language releasing "agents" and "representatives" according to its plain language); *Churchville v. GACS Inc.*, 973 So. 2d 1212, 1215 (Fla. 1st DCA 2008) (use of the term "affiliates" in a release did not render it ambiguous); *Bd. of Trustees of Florida Atl. Univ. v. Bowman*, 853 So. 2d 507, 510 (Fla. 4th DCA 2003) ("The inclusion of agents, employees, etc. is simply standard language in a general release that should be considered unambiguous and should not invalidate the proposal."). Rather, the word "agent" has a plain and ordinary meaning: it is a person or entity "who is authorized to act for or in place of another; a representative." Black's Law Dictionary (10th ed. 2014); *see also* Merriam-Webster Dictionary, at http://www.merriam-webster.com/dictionary/agent (defining "agent" as "a person who does business for another person : a person who acts on behalf of another").

Second, the Release is not restricted solely to the causes of action asserted against Atlas One in the state court complaint. Rather, the language of the Release expressly and unambiguously encompasses all existing and potential claims "of whatever kind or nature" and "in any way whatsoever including but not limited to" those that relate to the brokerage or investment accounts maintained with Atlas One (i.e., Accounts 9783, 9775, and 9908), the investments subject to the state court complaint, or "[a]ny act, omission, transaction, dealing, conduct or negotiation of any kind whatsoever between Alarcon Group and Atlas One . . . or between anyone acting or purporting to act on its behalf from the beginning of time to the date of this Agreement." *Cf. Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 315 (Fla. 2000) (discussing Florida cases on general releases). This general release plainly encompasses the claims the Alarcon Group asserted against Pershing before FINRA, which related to brokerage or investment accounts maintained with Atlas One, investments subject to the state court complaint, and acts or omissions by Atlas One or anyone acting or purporting to act on its behalf.

Finally, the Release is not the kind of "boilerplate" form that Florida courts have held may not adequately reflect the parties' intent. Those cases involve pre-printed release forms with blank spaces to write in the names of those individuals or entities specifically discharged. *See, e.g.*, *Hurt v. Leatherby Ins. Co.*, 354 So.2d 918 (Fla. 4th DCA 1978). The use of such forms may create a latent ambiguity which must be resolved by the introduction of extrinsic evidence of the parties' intentions. *Id*. That is not the case here. The Release is entirely typed and does not contain additional terms that were handwritten, which might create an ambiguity. "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Spungin v. GenSpring Family Offices, LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So.2d 738, 739 (Fla. 1st DCA 1989)). The plain language of the Release is the best evidence that the parties' intended to release Atlas One's "agents," as they set forth in the Release.

Additionally, the Release contains other provisions indicating that the parties read and understood the contract, including the Alarcon Group's acknowledgment that they "completely reviewed and [] received independent advice from their own legal counsel with

6

respect to the terms" of the agreement, and the Alarcon Group's representation and warranty that "they have read and understand this Agreement, that they have had the opportunity to have this Agreement translated into Spanish, and that before signing this Agreement, they have had the opportunity to be advised about its content and effect by legal counsel of their choice." (Settlement Agreement, ¶¶ 10, 16.)

Having determined that the language of the Release is unambiguous and covers Atlas One's agents, I must turn to the separate question of whether Pershing was an agent of Atlas One at the time the Release was executed. The elements of an actual agency relationship under Florida law are: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F. Supp. 2d 1087, 1095 n.5 (S.D. Fla. 2007).

The undisputed evidence establishes that Pershing was Atlas One's disclosed agent. The brokerage account statements Atlas One provided to each of the defendants expressly disclosed the agency relationship under the heading "THE ROLE OF PERSHING": "Pershing acts as the agent of your financial institution [Atlas One]." This statement is consistent with the Margin Agreements each defendant executed with Pershing, which provides that: Pershing has a clearing agreement with Atlas One; Pershing may accept from Atlas "orders for the purchase or sale of securities and other property on margin or otherwise"; Pershing may accept from Atlas One "any other instructions concerning said accounts"; and notices to Pershing concerning margin requirements or other matters related to Pershing's accounts "usually will go through [Atlas One]." Atlas One also submits as evidence the affidavit of Jorge Kalb, managing partner of Atlas One, who avers that Atlas One disclosed to the Alarcon Group that Pershing acted as Atlas One's agent.

The Alarcon Group has not provided any evidence to controvert Atlas One's evidence showing that Pershing was acting as Atlas One's agent.[1] At most, the Alarcon

---

[1] In fact, the Alarcon Group's allegations in their FINRA statement of claim against Pershing (ECF No. 73-7) are also consistent with the existence of a disclosed agency relationship. For example, they allege that Atlas One and Pershing entered into a clearing agreement in which Pershing "would clear trades and perform other functions for Atlas One"; Pershing "also provided other essential and critical functions in the clearing-broker, introducing-broker, and customer relationship, such as routinely collecting data for all introduced accounts like those of [the Alarcon Group]; and generating and providing supervisory, exception, audit, and activity reports for Atlas One's customer accounts, Atlas One's brokers, and Atlas One in general;" and all monthly

7

Group seizes on the following language in the Margin Agreement, which they claim indicates Pershing was not Atlas One's agent: "Pershing shall not be responsible for the acts or omissions of [Atlas One] or its employees"; and "I understand that [Atlas One] is not acting as the agent of Pershing . . . ." Similar language also appears in the Clearing Agreement: "Broker [Atlas One] shall not be deemed to be an agent of Pershing for any purpose, nor shall Pershing by deemed to have a fiduciary relationship with any of Broker's customers. Broker [Atlas One] acknowledges that Pershing does not control the business or operation of Broker." These statements are consistent with the disclosure in the brokerage account statements: it is Pershing that is the agent of Atlas One, and not the other way around. In other words, those statements do nothing more than confirm that Atlas One is the principal and Pershing is the agent, and as such, Pershing, as the agent, will not be liable for the acts or omissions of Atlas One, the principal.

   Finally, the fact that Pershing was not specifically named in the Release does not preclude it from being covered by the Release. *See Banfield v. Louis*, 589 So. 2d 441, 445 (Fla. 4th DCA 1991) ("A waiver that identifies parties by capacity is sufficient to absolve those parties from liability as a matter of law."). This is particularly true where, as here, the Release was typewritten in connection with the settlement (e.g., the names of the parties and particulars of the action appear in print, as the rest of the document), rather than using a pre-printed form with blank spaces to be filled in by hand. *Id*. ("[T]he instant waiver/release did not involve two types of release, one printed and one written-in, within a single pre-printed form. Therefore, it is distinguishable from the release in *Hurt* because it is not internally ambiguous. . . . The *Hurt* rationale does not include every waiver executed in favor of both named and unnamed parties, especially when all of those parties belong to one readily discernible group or category.").

## CONCLUSION

   As a matter of law, I conclude that the Alarcon Group released Atlas One and Pershing, as Atlas One's disclosed agent, of any claims the Alarcon Group may have had against them in relation to Accounts 9783, 9775, and 9908. The Alarcon Group has failed

---

account statements and trade confirmations received by the Alarcon Group "the name of Atlas One appears, and on all such documents it reads: 'Clearing through Pershing LLC, a Subsidiary of the Bank of New York Mellon Corporation, Member FINRA, NYSE, SIPC.'"

to present evidence to show there are genuine issues of material fact for trial on these issues.[2]

The evidence shows that the agency relationship between Atlas One and Pershing was disclosed and should have been known to the Alarcon Group prior to the settlement. Atlas One has presented uncontroverted evidence to show it disclosed to the Alarcon Group that Pershing was acting as its agent with respect to the accounts at issue in this case. Pershing's role vis-à-vis Atlas One is delineated in the Clearing Agreement, the Margin Agreement, and the brokerage account disclosures. Its role satisfies the elements required to establish an agency relationship. The evidence—together with the unambiguous language of the fully typewritten Release—further supports a finding that the parties' intended that Atlas One's agents (which include Pershing) would be encompassed within the Release's broad language. *Cf. Alpine Fresh, Inc. v. Washburn*, 77 So. 3d 765, 767 (Fla. 3d DCA 2011) (holding as a matter of law that release between insured and insurer, which covered insurer's agents also covered insurance broker, who was disclosed as an agent to the insured).

Finally, I also find that Atlas One has presented uncontroverted evidence of its damages in the amount of $225,000. This amount was not disputed by the Alarcon Group.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment (ECF No. 73) is **GRANTED in part and DENIED in part**. Plaintiff contends it is entitled to reasonable attorney's fees and costs and asks this Court to enter judgment for such fees and costs, in addition to an award of $225,000. However, Plaintiff has failed to brief this issue and provided no evidence as to the amount of fees and costs. Plaintiff shall file a separate motion for attorney's fees and costs, on or before March 30, 2015. Together with the motion, Plaintiff shall also file on March 30, 2015, a proposed judgment to be entered in this matter, which is consistent with this order.

2. Defendants' Cross-Motion for Summary Judgment (ECF No. 76) is **DENIED**.

---

[2] The Alarcon Group asserted several affirmative defenses in its pleadings. However, none of these affirmative defenses were presented or briefed as part of these cross motions, and therefore I have not considered them. If a party does not present oppositional arguments to the court, it forfeits those arguments. *See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011) ("It is well settled that issues not raised in the district court in the first instance are forfeited.").

9

3. The Clerk is directed to administratively **CLOSE** this case. All pending motions, if any, are **DENIED as moot**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 16th day of March 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*